STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| LAMOILLE UNIT | DOCKET NO.: |

Element 3 Inc., )
d/b/a West Branch Gallery, )         USDC - DVT
    Plaintiff, )                           2:21-cv-152
)
    v. )
)
The Cincinnati Insurance Company, )
    Defendant. )

## COMPLAINT

NOW COMES Plaintiff Element 3 Inc., d/b/a West Branch Gallery (hereinafter "Plaintiff") by and through its counsel, Stackpole and French Law Offices, to state the following claims against Defendant, The Cincinnati Insurance Company (hereinafter "Defendant").

## PARTIES

1. Plaintiff, Element 3 Inc., d/b/a West Branch Gallery, is a Vermont company with a principal place of business located in the Town of Stowe, County of Lamoille, State of Vermont.

2. Upon information and belief, Defendant, Cincinnati Insurance Company, is headquartered in Fairfield, Ohio, and operates satellite offices throughout the country including an office located in the Town of Colchester, County of Chittenden, State of Vermont.



STACKPOLE & FRENCH
LAW OFFICES
P.O. Box 819
Stowe, Vermont 05672
802.253.7339

## JURISDICTION AND VENUE

3. Jurisdiction and venue lie in the Vermont Superior Court, Civil Division, Lamoille Unit pursuant to 4 V.S.A. § 31 and 12 V.S.A. § 402(a) because the subject-matter of this claim arises in Stowe, Vermont.

## NATURE OF ACTION

4. Plaintiff has maintained a business insurance coverage policy including commercial coverage lines for fine arts breakage with Defendant for over nine years.

5. On May 17, 2019, Christopher Curtis, principal of Plaintiff (hereinafter "Curtis") discovered damage to a sculpture titled *Paso Doble II* (hereinafter "the subject sculpture") in Plaintiff's insured sculpture garden located in Stowe, Vermont.

6. On the same day, the loss was reported to Plaintiff's Lamoille Valley Insurance Agent, Rene Davis.

7. On May 19, 2019, Phillip Sorrentino, an adjuster employed on behalf of the Defendant, visited Plaintiff to inspect the damage to the subject sculpture.

8. On May 31, 2019, Phil Terry of CCA Consultants met with Curtis to discuss the claim and at that time informed Curtis that Mr. Terry was not an engineer and had no training in fine arts and had no experience evaluating or appraising fine art or sculpture work.

9. On June 24, 2019, Phillip Sorrentino sent correspondence to Plaintiff to advise that the investigation was ongoing and provided a warning that insurance fraud was a crime. *See* June 24, 2019 Sorrentino Correspondence hereto attached as Exhibit 1.

10. On July 1, 2019, CCA Consultants issued a report that ignored common practices in the fine arts community and evaluated the damage to the subject sculpture according



STACKPOLE & FRENCH
LAW OFFICES
P.O. Box 819
Stowe, Vermont 05672
802.253.7339

to construction practices common in the building trade. *See* CCA Consultants Report hereto attached as Exhibit 2.

11. CCA concluded that the damage to the subject sculpture was a result of inadequate construction.

12. On July 8, 2019, Phillip Sorrentino sent correspondence to Plaintiff to deny the entirety of the claim citing the CCA Report that "cracks in the sculpture are most likely the result of inadequate design of the mounting connections and their resistance to external forces", and completely ignored Plaintiff's assertions that such damage could only result from vandalism. *See* July 8, 2019 Correspondence from Sorrentino hereto attached as Exhibit 3.

13. On September 3, 2019, Plaintiff submitted two affidavits to Defendant to provide further necessary information to assist Defendant in adjusting the claim. *See* Affidavit of Christopher Curtis hereto attached as Exhibit 4; *See* Affidavit of Stephanie Gueldner hereto attached as Exhibit 5.

14. The affidavits asserted, based on decades of experience, that the construction methods employed as related to the subject sculpture were reasonable and proper and in no way defective, that the sculpture had survived severe weather for over five years without damage, and that the location of the sculpture in the insured garden exposed it to the general public where vandalism was common. *See* Exhibit 4-5.

15. Within the Affidavit of Stephanie Gueldner, she asserted that she had observed increased transient pedestrian traffic near the subject sculpture and had repeatedly scolded passing individuals to be careful near the various sculptures in Plaintiff's insured garden.



16. On September 24, 2019, Phillip Sorrentino sent written correspondence to Plaintiff acknowledging receipt of the affidavits and repeating a warning about prosecution for fraudulent claims. *See* September 24, 2019 Sorrentino Correspondence hereto attached as Exhibit 6.

17. On November 5, 2019, Frank Silvestri was retained by Defendant to take written statements from Curtis and Gueldner. *See* Interview Transcripts hereto attached as Exhibit 7.

18. These interviews confirmed that no plausible explanations, other than vandalism, were present to explain the damage to the subject sculpture.

19. On November 11, 2019, Defendant renewed its denial of the claim claiming no new information had been uncovered.

20. On January 5, 2020, Plaintiff retained Joseph Murphy, P.E., a structural engineer to evaluate the damage to the subject sculpture. *See* Murphy Report hereto attached as Exhibit 8.

21. Murphy found that the subject sculpture had been adequately designed and appropriately constructed to have adequate resistance to natural forces, wind, temperature changes, and seismic activity.

22. In addition, Murphy reviewed the CCA Report and found that building standards referenced in the CCA Report were from the transportation industry and had no bearing on the situation at hand.

23. Murphy concluded that the most likely cause of the damage to the subject sculpture was vandalism.



STACKPOLE & FRENCH
LAW OFFICES
P.O. Box 819
Stowe, Vermont 05672
802.253.7339

## COUNT I
## BAD FAITH FAILURE TO PAY FIRST-PARTY CLAIM BY INSURED

24. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 23 above.

25. On May 17, 2019, Plaintiff reported a loss to Defendant for vandalism damages to its covered property.

26. On May 31, 2019, Defendant hired CCA Consultants to investigate the loss.

27. On May 31, 2019, Phil Terry of CCA admitted to Plaintiff that he had no experience in the subject matter and was not versed in fine arts construction.

28. Despite an admitted lack of knowledge in the subject matter, CCA generated a report that the damage to the subject sculpture was a result of inadequate construction.

29. Defendant unjustifiably relied on the CCA report to deny Plaintiff's claim stating inadequate construction of the subject sculpture was the cause of damage.

30. Plaintiff provided information to Defendant in two affidavits that showed that vandalism was a common problem in the area.

31. Defendant unjustifiably continued to rely on the CCA report to deny Plaintiff's claim.

32. Plaintiff retained a professional engineer who concluded that the subject sculpture was adequately constructed and that but for vandalism the damage would not have occurred.

33. Defendant ignored the findings of Mr. Murphy and continued to deny the claim.

34. Overall, Defendant retained an admittedly unqualified expert to investigate the loss.

35. Defendant used the results of the unqualified investigation to deny Plaintiff's claim.



36. When presented with the findings of a qualified expert that concluded that vandalism must have occurred, Defendant ignored those findings.

37. Defendant had no reasonable basis to deny Plaintiff the benefits of a policy that Plaintiff had in place for nine years.

38. Defendant knew and recklessly disregarded facts provided by Plaintiff that did not support Defendant's basis for denial of the claim.

39. Defendant acted in bad faith in adjusting Plaintiff's insurance claims and bears damages to Plaintiff for failing to adjust Plaintiff's claim in good faith.

## COUNT II
## BREACH OF CONTRACT

40. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 39 above.

41. Plaintiff entered into a contract with Defendant in which Plaintiff agreed to pay for coverage services and Defendant agreed to fairly investigate and pay all covered claims.

42. Defendant conducted an investigation of the claim and relied upon the findings of an admittedly unqualified investigator.

43. Defendant denied Plaintiff's valid claim for coverage.

44. As such, Defendant has breached the subject contract and has caused Plaintiff to sustain damages as a direct and proximate result.

## COUNT III
## BREACH OF CONVENANT OF GOOD FAITH AND FAIR DEALING

45. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 44 above.



46. At all times relevant to this litigation, Defendant was in a contractual relationship with Plaintiff and owed a duty to Plaintiff to act in good faith and deal fairly with them.

47. Defendant breached this duty on more than one occasion by wrongfully and recklessly relying on the CCA Report that was generated by an investigator who admitted that he was not versed in the subject matter of the subject insurance claim.

48. Defendant' failure to act in good faith and fair dealing with the Plaintiffs is a direct and proximate cause of Plaintiffs' damages.

### COUNT IV
### UNJUST ENRICHMENT

49. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 48 above.

50. Defendant accepted the benefit of payments from the Plaintiff for over nine years in order to maintain insurance coverage

51. Defendant's failure to appropriately cover Plaintiff's qualified loss under the terms of the insurance policy have led to the Defendant being unjustly enriched by the Plaintiff.

52. Accordingly, Defendant is liable to Plaintiff for all costs paid by the Plaintiffs the exact amount to be proven at trial, arising out of Defendant's unjust enrichment.

### COUNT V
### CONSUMER FRAUD

53. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1 through 52 above.



STACKPOLE & FRENCH
LAW OFFICES
P.O. Box 819
Stowe, Vermont 05672
802.253.7339

54. Through conversations, written representations, and advertising, Defendant mislead Plaintiff with deceptive acts and practices regarding the Plaintiff's provided insurance coverage for fine arts under the subject policy.

55. Plaintiff justifiably relied on these deceptive acts and practices when they decided to acquire an insurance policy from Defendant and continue paying the insurance premiums for over nine years.

56. Defendant's deceptive acts and practices were material in Plaintiff's decision to acquire an insurance policy through Defendant.

57. Defendant's conduct constitutes Consumer Fraud which has caused and will continue to cause Plaintiff harm and damages.

**WHEREFORE**, Plaintiff requests that this Court:

A. Award Plaintiff judgment in its claim against Defendant;

B. Award Plaintiff damages in an amount to be determined at trial;

C. Award Plaintiff attorneys' fees and costs relative to this action;

D. Award Plaintiff compensatory, consequential, and punitive damages;

E. Award Plaintiff prejudgment interest; and

F. Award Plaintiff all other relief as the Court may deem equitable and just.



DATED at Jeffersonville, Vermont this 13th day of May, 2021.

                               STACKPOLE & FRENCH LAW OFFICES

By:   William F. Grigas, Esq.
       Stackpole & French Law Offices
       P.O. Box 819, 255 Maple Street
       Stowe, VT  05672
       t.802.253.7339/f.802.253.7330
       wgrigas@stackpolefrench.com
       Attorney for Plaintiff

